Minute Order Form (06/97)

JSV

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7972 | **DATE** | 6/13/2001 |
| **CASE TITLE** | Woodson vs. Pfizer, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We dismiss the ADEA claim against Phoenix which Woodson voluntarily abandoned. Further, we convert the motions to dismiss into motions for summary judgment and grant both (Docs 12-1, 13-1 & 13-2) in favor of Phoenix and Pfizer.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 1 4 2001 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | 15 | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FOR DOCKETING 01 JUN 13 PM 12:57 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSE WOODSON, )
)
Plaintiff, )
)
vs. ) No. 00 C 7972
)
PFIZER, INC.; WARNER LAMBERT-PARKE )
DAVIS, INC.; PARKE-DAVIS, INC.; and )
PHOENIX PHARMACEUTICALS, )
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court are the motions to dismiss of Defendants Pfizer, Inc. and Phoenix Pharmaceuticals. We convert the motions into ones for summary judgment and grant both of them.

### BACKGROUND

Because the movants have attached and relied on documents outside of the pleadings, we treat the instant motions to dismiss as ones for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b) (stating that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the

pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

Defendant Phoenix Pharmaceuticals, Inc. ("Phoenix") is a drug marketing company. (Foster Decl. ¶ 3.) According to its president, Parran L. Foster III, the company's mission is to

> (1) capture dollars generated within the urban community pharmaceutical market through the promotion of ethical pharmaceutical products; and (2) to return a portion of those dollars directly to the community which generates them in the form of scholarships designated for deserving disadvantaged students within those communities; and (3) to create job opportunities for individuals in those communities.

(Id. ¶ 2.) In accordance with this mission, Phoenix entered an agreement with Defendant Pfizer, Inc.[1] ("Pfizer") whereby Phoenix marketed drugs manufactured by Pfizer in mutually agreed upon target cities. (Id. ¶ 3.) Consistent with its mission, Phoenix limited its operations to "ethnically diverse urban communities with a significant segment of the indigenous populations made up of individuals from various minority groups." (Id. ¶ 5.) Because the company's purpose was to enhance educational and economic benefits in inner cities, no Phoenix territory has ever existed outside of an urban setting. (Id. ¶ 6.) By design, Phoenix refuses to expend its

---

[1] At the time of the agreement, Pfizer was known as the Warner Lambert Company, and Phoenix contracted with its Parke-Davis sales division.

resources in areas "without interest in our goals and mission which define our competitive advantage in the marketplace." (Id.) Phoenix would be unable to compete in other more affluent territories, where "major pharmaceutical firms pour resources into impacting the markets. . . ." (Id.)

Plaintiff Rose Woodson ("Woodson") worked for Phoenix from approximately January 1998 to June 1999. An African-American female, Woodson alleges that the agreements between Phoenix and Pfizer required assignment of Phoenix's sales representatives based on a territory's racial composition. As a result, Phoenix performed its obligations under the agreements by assigning its sales representatives, including Woodson, to territories in which the population was predominantly African American and Hispanic or perhaps racially mixed, but never to a predominantly white territory. Woodson contends that this "racially segregated sales mechanism" deprives her of the opportunity to work in predominantly white geographic areas. In turn, the mechanism disables her from expanding her sales territory, increasing her sales performance, advancing within Phoenix by position and salary, obtaining increased salary bonuses, and gaining experience in the market as a whole.

Woodson filed this action against Phoenix and Pfizer on December 20, 2000. The complaint alleges violation of the Age Discrimination in Employment Act ("ADEA") against Phoenix and violations of 42 U.S.C. sections 1981 and 1985 against

Phoenix and Pfizer. After Phoenix pointed out in its brief that Phoenix employs fewer than 20 people and thus is not an "employer" for purposes of liability under the ADEA, Woodson voluntarily withdrew her ADEA claim against Phoenix. Accordingly, we are left only to decide whether the section 1981 and 1985 claims can stand.

Now Phoenix and Pfizer have each brought motions to dismiss the claims against them. Phoenix and Pfizer contend that Woodson has failed to allege any disparate treatment based on her own race, and that she lacks standing to assert a claim on behalf of the physicians in the affluent white communities in which Phoenix does no business.

## DISCUSSION

Section 1981 protects "the right to make and enforce contracts without regard to race" including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. Parties to a section 1981 suit may avail themselves of the methods and order of proof applicable to a claim of disparate treatment under Title VII. See Randle v. LaSalle Telecomm., Inc., 876 F.2d 563, 568 (7th Cir. 1989); Freidel v. City of Madison, 832 F.2d 965, 972 (7th Cir. 1987). To prevail on a section 1981 claim, Woodson must show that Phoenix and Pfizer intentionally discriminated against her because she is African-American. See

- 4 -

Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 510 (7th Cir. 1986). In making her case, Woodson can proceed by either of two paths: (1) by presenting direct evidence that race was a determining factor in Defendants' decision, or (2) by tendering circumstantial evidence sufficient to "provide a basis for drawing an inference of intentional discrimination." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).

Woodson cannot state a claim under section 1981 because she has not alleged that Phoenix or Pfizer intentionally discriminated against her because of her race. With respect to Phoenix, her employer, Woodson has not alleged any direct evidence that she was treated differently because of her race. Nor has she raised allegations of circumstantial evidence of discrimination based on her race. That is, she does not allege that she was treated differently than similarly-situated non-African-American employees. Indeed she cannot, as Phoenix is comprised entirely of African-American employees. Thus Woodson has not stated a claim because she has failed to allege that she suffered discrimination because she is African-American.

In her papers, Woodson attempts to avoid this conclusion by challenging Phoenix's practice of concentrating its business in certain geographic locales. However, Phoenix's decision resulted from its assessment of which business market it could best compete in -- not from racial animus. That this business decision may

have prevented Woodson from expanding her sales territory, increasing her sales performance, advancing within Phoenix by position and salary, obtaining increased salary bonuses, and gaining experience in the market as a whole is simply not actionable under section 1981 because Woodson has not alleged the requisite discriminatory intent on the part of Phoenix.

With respect to Pfizer, Woodson apparently seeks to impose liability under a theory that Pfizer interfered with her efforts to make contracts with physicians in affluent white neighborhoods. In support of this argument, she relies on Vakharia v. Swedish Covenant Hospital, 765 F. Supp. 461 (N.D. Ill. 1991). In Vakharia, an anesthesiologist alleged that the hospital had discriminatorily reduced the quantity and quality of her caseload, classified her as "junior" and limited her procedures accordingly, unofficially suspended her, removed her from the "first call" schedule, and limited her caseload. See id. at 463. Because the anesthesiologist was able to obtain patients only through assignment of and referral by the hospital, and because she regularly entered contracts to perform anesthesiology services through those assignments and referrals, the Court concluded that she was entitled to proceed against the hospital under section 1981 on a theory of interference with her ability to make contracts with prospective patients. See id. at 472.

The case at bar is not analogous to Vakharia. First, and most critical, at the motion to dismiss stage Vakharia had a cognizable claim that the hospital was discriminating against her because of her race. See id. at 463, 471-72. Woodson cannot say the same. She challenges Phoenix's and Pfizer's policies about where they do business, but her Complaint is silent as to any discrimination against her because she is African-American. Furthermore, prior to the hospital's allegedly discriminatory conduct, Vakharia had forged contracts with assigned and referred patients. See id. at 463. The hospital's alleged discrimination disrupted this established practice. See id. Unlike Vakharia, however, Woodson has not alleged that she had previously made contracts with physicians in affluent white neighborhoods. Indeed she cannot make such allegations because Phoenix had never done business in such neighborhoods. As a result, because those contracts never existed, neither Phoenix nor Pfizer could have interfered with them. Woodson chose to ally herself with a company that limits itself to working in particular neighborhoods and targeting a specific clientele. She cannot now transform this own voluntary decision into a cause of action under section 1981 without alleging direct or circumstantial evidence of conduct that supports an inference of racial animus directed toward Woodson.

Because Woodson's claim under section 1985(3) is premised entirely on her unsuccessful section 1981 claim, it too must fail. See Great Am. Fed. Sav & Loan

Ass'n v. Novotny, 442 U.S. 366, 372, 88 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979) (holding that claims under section 1985(3) provide no substantive rights themselves, but merely furnish a remedy for violations of rights created elsewhere); Wesley v. Howard Univ., 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (holding that a section 1985(3) claim premised on violations of section 1981 can succeed only to the extent the underlying section 1981 claim is successful).

## CONCLUSION

For the foregoing reasons, we dismiss the ADEA claim against Phoenix which Woodson voluntarily abandoned. Furthermore, we convert the motions to dismiss into motions for summary judgment and grant both in favor of Phoenix and Pfizer.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: June 13, 2001